# United States Court of Appeals
## For the First Circuit

No. 04-1853

UNITED STATES OF AMERICA,

Appellee,

v.

JULIO PÉREZ-RUIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Boudin, Chief Judge,
Siler,[*] Senior Circuit Judge,
and Saris,[**] District Judge.

Bruce J. McGiverin, by appointment of the court, for appellant.
Germán A. Rieckehoff, Assistant United States Attorney, with whom H.S. Garcia, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Senior Appellate Attorney, were on brief for appellee.

August 26, 2005

---

[*]Of the Sixth Circuit, sitting by designation.

[**]Of the District of Massachusetts, sitting by designation.

**BOUDIN, Chief Judge.**  Julio Perez-Ruiz ("Perez") was indicted in June 2000 for conspiring to distribute heroin, cocaine and cocaine base and in July 2001 was convicted after a jury trial. Because of evidence at trial that Perez had participated in the murder of a dealer who had broken with the ring, the district court found that the maximum sentence under the Sentencing Guidelines was life imprisonment and imposed this sentence upon Perez, who appealed both from his conviction and the sentence.  On appeal, this court affirmed the conviction but remanded for re-sentencing. United States v. Perez-Ruiz, 353 F.3d 1 (1st Cir. 2003), cert. denied, 541 U.S. 1005 (2004) ("Perez-Ruiz I").

The reason for the remand was that the guideline sentence imposed on Perez exceeded the statutory maximum that could be imposed under Apprendi v. New Jersey, 530 U.S. 466 (2000).  Absent a finding either of prescribed amounts of drugs or of death or serious bodily injury, a conspiracy to distribute heroin, cocaine and cocaine base (or any one of them alone) has a maximum sentence of twenty years' imprisonment.  21 U.S.C. §§ 841(b)(1)(C), 846 (2000).  Under Apprendi, that finding must be made by the jury because it enlarges the statutory maximum.  See United States v. Eirby, 262 F.3d 31, 36-37 (1st Cir. 2001).

Under subsection (A) of section 841(b)(1), the amounts of the three drugs charged in the Perez indictment (or any one of them) would have permitted a life sentence, but the jury

instructions did not require the jury to find specific amounts in order to convict, nor were there special verdict findings. And although subsection (C) also permits a maximum sentence of life imprisonment where death results from the drug crime, again the jury made no determination that such a death had occurred. The Apprendi objection had been preserved and, given that the trial evidence as to drug quantity was not overwhelming, we refused to find the Apprendi error harmless. Perez-Ruiz I, 353 F.3d at 18.

The case was therefore remanded to the district court for re-sentencing up to a maximum of twenty years. On May 20, 2004, the district court re-sentenced Perez, imposing a sentence of 235 months. The district judge computed the guideline range as 188-235 months based upon the quantity of drugs he found attributable to Perez and further enhancements for use of a firearm and Perez' supervisory status. Under United States v. Booker, 125 S. Ct. 738 (2005), these findings may be made by the judge alone. Perez appeals again to challenge this new sentence on several different grounds.

Perez' first argument is that the true statutory maximum is not twenty years but only five--the maximum that applies if the drug involved in the conspiracy is marijuana of no specified amount. 21 U.S.C. § 841(b)(1)(D). The first difficulty with this argument is that we determined on the prior appeal, in the face of the same argument, that twenty years was the correct maximum.

Perez-Ruiz I, 353 F.3d at 15 n.2.  Although the governing law of the case doctrine arguably permits us to reexamine our own prior determination at a later stage of the same case (if we deem that appropriate), United States v. Moran, 393 F.3d 1, 7-8 (1st Cir. 2004), it will soon be apparent that there is no basis for doing so here.

The crime charged in the indictment was a conspiracy to distribute heroin, cocaine and cocaine base, and the jury was instructed that it was this conspiracy that had to be found in order to convict.  The indictment also referred to three episodes involving marijuana; but they were not charged as objects of the conspiracy.  The jury instructions mentioned marijuana, along with heroin, cocaine and crack cocaine, as controlled substances, but the jury instructions thereafter expressly identified the conspiracy at issue as an agreement to distribute heroin, cocaine and cocaine base and did not include marijuana.

At trial, there was some evidence as to marijuana presented, including description of a delivery of the drug to Perez' drug point, but also evidence of the hard drugs charged in the indictment.  In order to convict, the jury had to find that the conspiracy was directed to the hard drugs, not marijuana; strictly speaking, it had to conclude that all three hard drugs were objects of the conspiracy because the indictment charged in the conjunctive.  See United States v. Soto-Beníquez, 356 F.3d 1, 48-50

(1st Cir. 2003), cert. denied, 541 U.S. 1074 (2004).  In all events, there is no realistic chance that, in convicting under this indictment and these instructions, the jury constructively amended the indictment by convicting Perez solely for a marijuana conspiracy--itself never charged.

Perez' next argument is that the district judge violated the Sixth Amendment by himself making the determinations as to drug quantity and other enhancements, and that the remedial holding of Booker violates the ex post facto and due process clauses of the Constitution.  U.S. Const. art. I, § 9, cl. 3; Id. amend. V. Although arguably this claim was not properly preserved in the remanded proceeding, our case law has already rejected such claims on the merits so we bypass the preservation question.

Under the 5-4 constitutional ruling in Booker, judge-made enhancements under the guidelines that result in a sentence greater than the sentence that could be imposed based solely on the facts found by the jury do amount to Sixth Amendment violations if the guidelines are treated as mandatory; but under the companion 5-4 remedial ruling in Booker, this problem is washed out by treating the guidelines as advisory.  A defendant sentenced under the mandatory regime may be entitled to re-sentencing under the advisory one--we return to this issue--but Booker both created and cured the constitutional error at the same time.  See United States v. Antonakopoulos, 399 F.3d 68, 75-76 (1st Cir. 2005).

Perez' fallback is that it was (in some metaphysical sense) always a violation of the Sixth Amendment to permit such judge-made findings at sentencing and that it violates ex post facto and due process principles to apply Booker's remedial cure of advisory guidelines for a crime that occurred prior to that decision. As we explained in United States v. Lata, 415 F.3d 107, 2005 WL 1491483, at *2 (1st Cir. June 24, 2005), the ex post facto clause does not apply because the changes wrought by Booker were by judicial decision and not by statute. The due process argument remains available to Perez, protecting against adverse changes in the law after the crime was committed where the change denies the defendant fair warning, but "only where the alteration is 'unexpected and indefensible' by reference to the case law that had been expressed prior to the offense." Id. at *3 (citing Rogers v. Tennessee, 532 U.S. 451, 461 (2001)).

There is no fair warning problem in this case. At the time of Perez' crime--indeed, until the morning that Booker was announced by the Supreme Court--Perez faced a foreseeable risk that any crime he committed would result in a guideline sentence (within the statutory maximum) based on judge-made fact-finding. That is exactly what he got in this case. For Perez, the change wrought by Booker might now permit a still lower sentence, but it did not produce one higher than any pre-Booker reasonable expectation.

As to the possibility of a lower sentence, Perez has been free for months to point to any circumstance that might suggest that--if the district judge were offered the opportunity--the judge might under advisory guidelines impose a sentence below 235 months. No such suggestion has been made and for good reason. The judge sentenced Perez at the very top of the available guideline range, compare United States v. Vázquez-Rivera, 407 F.3d 476, 490 (1st Cir. 2005), petition for cert. filed (U.S. Aug. 5, 2005) (No. 05-5686), and Perez points to no mitigating factors that mandatory guidelines forbad or discouraged the district judge to consider.

If anything, an advisory-guideline sentence for Perez could easily be longer--although only by five months. The district judge earlier made clear his view that Perez was not only a conspirator but also an enforcer who had committed a murder in aid of the conspiracy. Absent a jury determination, this fact cannot raise the statutory maximum, but it could easily have been considered in deciding where to sentence under an advisory system (and, seemingly, in fixing the guideline range itself although the district judge did not base his sentencing range on this fact).

Next, Perez argues that the district judge erred in his factual findings by attributing to him 15 kilograms of cocaine--findings that we review for clear error. United States v. Santos, 357 F.3d 136, 140 (1st Cir. 2004). In a drug conspiracy, a defendant is responsible "not only for the drugs he actually

-7-

handled but also for the full amount of drugs that he could reasonably have anticipated would be within the ambit of the conspiracy." Id.

The district court's findings as to the 15 kilograms are adequately supported. At trial, a member of the conspiracy testified that he had supplied the conspiracy with 2-4 kilograms of cocaine on "several" occasions, amounting to "more than 15" kilograms of cocaine; a federal agent stated summarily that the conspiracy distributed "over 150 kilograms of cocaine"; and-- perhaps at least as important--there was evidence that the drug conspiracy was a broad one covering a substantial number of drug "points" (locations of sale) over a substantial period.

As for Perez' own role, he was not a minor figure, such as a courier or lookout on the fringe of the operation. The evidence at trial indicated that he had participated in the conspiracy for five years and controlled his own drug point, purchasing supplies at a higher level and employing others to assist him. Tellingly, the district judge found enough evidence to justify ranking Perez as a supervisor under the guidelines, and summed up his sentencing determination as follows:

> I think there is plenty on this record to
> state this was an encompassing organization
> that ran a ton of points, many, many points.
> And those who were in the managerial levels of
> the organization had reason, []or should have
> known, you know, and in that sense, it ought
> to be 15 kilos is a very, very conservative
> estimate.

The specific evidence is not without weaknesses. The man who delivered the "several" multi-kilogram shipments gave them not to Perez but to a senior figure in the conspiracy, and these deliveries occurred just about the time that Perez apparently joined. The agent who estimated that the conspiracy handled over ten times as much cocaine gave no foundation for his estimate. It was concerns of this kind that led us in the earlier decision to conclude that the evidence as to amount was not so powerful as to overcome the preserved Apprendi error. Perez-Ruiz I, 353 F.3d at 18-19.

But it is one thing to disregard an error on the ground that it has not been shown harmless beyond a reasonable doubt; it is quite another to conclude that the district court committed clear error in making findings about foreseeable amounts in a conspiracy described at length as having multiple sales points, a hierarchy of suppliers and an existence over a substantial period of time. Whether "conservative" or not, the district court's finding of 15 kilograms was adequately supported against any charge that the finding was clear error.

Finally, Perez argues that the sentencing was procedurally faulty. The pre-sentence report, issued before his initial sentencing and unaltered for the re-sentencing, focused exclusively upon a homicide with which Perez was associated but which did not factor into the district court's eventual sentencing

determination now on appeal.  The government's objections to the pre-sentence report, filed for the re-sentencing, also offered an alternative sentence calculation to the homicide cross-reference, containing the drug quantity calculation and firearm and supervisory enhancements on the basis of which the district court eventually sentenced.

Because the alternative sentencing basis had been presented in the pre-sentence process, the district judge's decision to base Perez' sentence on this alternative calculation was not improper under Fed. R. Crim. P. 32, which effectively mandates--although it does not state the matter in these general terms--a measure of notice to the defendant of the bases on which the court may impose a sentence.  However, the government filed its objections containing the new calculations on the day of the re-sentencing hearing, thus arguably depriving Perez of adequate notice of this new calculation.[1]

Nevertheless, at the sentencing hearing defense counsel ably (although unsuccessfully) argued on the merits against the court's contemplated findings as to drug quantity and use of a firearm, an argument complete with case citations.  More important, counsel did not object that he had been given inadequate notice or

---

[1]Because the original pre-sentence report was resubmitted without revisions, it is debatable which, if any, of the prescribed time limits found in Fed. R. Crim. P. 32 applied to the parties. See Fed. R. Crim. P. 32(f)(1), (g).  At the very least, the spirit of the rules required some notice and opportunity to object.

ask for a continuance on the ground that he needed more time to prepare to contest the calculations based on newly minted bases.

Although the sentencing procedures laid out by Rule 32 are designed to narrow the issues and provide due notice, see Fed. R. Crim. P. 32, it is well settled that counsel is expected to object if he conceives that these procedures have been violated and that, in the absence of a timely objection, only plain error review is available. Soto-Beniquez, 356 F.3d at 53; United States v. López-López, 295 F.3d 165, 169 (1st Cir. 2002). Nothing said on this appeal explains why the sentencing might have come out differently if more time had been afforded.

Perez' brief also complains that the district judge failed to require the probation officer to revise the pre-sentence report in light of the alternative sentencing calculations, and that the court then failed to make formal rulings on any disputed portion of the report or other controverted matters as required by Fed. R. Crim. P. 32(i)(3)(B). The rule provides that the probation officer "may" revise the pre-sentence report, Fed. R. Crim. P. 32(f)(3), and as to the findings it is plain from the sentencing transcript that the district court specifically spelled out its determinations and the bases on which it made them.[2]

---

[2]The government misinterprets or mischaracterizes this argument as addressed to the supposed failure of the district court to append a copy of its determinations to the version of the pre-sentence report that is submitted to the Bureau of Prisons. See Fed. R. Crim. P. 32(i)(3)(C). This is not the relief Perez seeks;

-11-

There is a separately filed pro se brief by Perez himself which we have considered together with the briefs filed by counsel. In this brief, Perez' first claim is the same <u>Booker</u> claim made by his counsel and rejected above; his second claim is that <u>Booker</u> error is a form of structural error, an argument flatly contravened by our precedent, most recently in <u>Vázquez-Rivera</u>, 407 F.3d at 489, and on which nothing more need be said.

<u>Affirmed</u>.

if the government views this failure to append as error it should raise that objection with the district court.