**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 11, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RANDALL DERWIN TERRELL,

Defendant - Appellant.

No. 05-3331
(Kansas)
(D.Ct. No. 02-CR-40154-02-JAR)

_____

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Randall Derwin Terrell appeals from his federal conviction and sentence

for possession of cocaine with intent to distribute and conspiracy to possess

cocaine with intent to distribute in violation of 21 U.S.C. §§ 841 and 846. Terrell

_____

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

presents three questions on appeal: (1) whether the Sixth Amendment prohibits the introduction of Terrell's statements to a federal agent obtained after counsel had been appointed for his defense on state charges, (2) whether the district court's refusal to decrease his sentence due to his alleged minor role in the conspiracy is an erroneous application of the advisory guidelines, and (3) whether the district court's application of the remedial holding in *United States v. Booker*, 543 U.S. 220 (2005), to Terrell's pre-*Booker* offense violates the *Ex Post Facto* clause. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we AFFIRM.

I.    Background

On November 5, 2002, Terrell, the driver, and his brother-in-law, Murnia Vercher, were stopped by a Kansas Highway patrolman, Officer Rios, for a traffic infraction. In the course of events, approximately two kilograms of cocaine were found hidden in the side panels of the rental van Terrell was driving. Terrell and Vercher were arrested and charged in Kansas state court with possession of cocaine with intent to distribute in violation of Kan. Stat. Ann. § 65-4161, and failure to have a controlled substance tax stamp in violation of Kan. Stat. Ann. §§ 79-5204 and 5208. At the time of the arrest, the drugs and a cell phone were seized as evidence.

On November 6, 2002, Terrell appeared before a Riley County judge via close circuit television hook up from the Riley County Jail. Based on his

-2-

indigency affidavit, an attorney from state public defender's office was appointed for his defense. However, no specific attorney was immediately assigned to the case.

The next day, before Terrell had an opportunity to talk with his appointed attorney, Task Force Officer Ray Bailiff, a Kansas Highway patrolman on assignment to the Drug Enforcement Agency (DEA) Task Force, traveled to the Riley County Jail to question Terrell in relation to a federal investigation regarding the cocaine seizure. Based on the large quantity of drugs in the van, Bailiff believed there were more conspirators involved in the drug distribution. Therefore, he wanted to question Terrell regarding "the source, the brokers, the suppliers, other traffickers [and] the distributors" to determine whether federal drug conspiracy charges would be appropriate. (R. Vol. 3 at 16). Officer Rios accompanied Bailiff to the interview. Bailiff began by asking Terrell for a personal history, including the identification of his two home telephone numbers. He then read Terrell a *Miranda* warning from a card used for that purpose.[1] Bailiff next asked, "Have you got anything you want to tell me?" (R. Vol. 3 at 22-23). Terrell told Bailiff he was abandoned by his real family and had become close to his wife's family. He said "he couldn't rat on his family," but advised

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 479 (1966) (a suspect must be apprised of his rights against compulsory self-incrimination and to consult with an attorney before authorities may conduct custodial interrogation).

Bailiff to "[c]heck the fingerprints. That will tell you who put it in there." (R. Vol. 3 at 22, 34). The interview lasted approximately ten minutes.[2]

On December 30, 2002, Terrell and Vercher were indicted in federal court on two counts, possession with the intent to distribute cocaine (Count One) and conspiring to possess with the intent to distribute cocaine (Count Two). On June 16, 2004, a Superseding Indictment was filed expanding the dates of the conspiracy charge. Prior to trial, Terrell moved to suppress the statements he made to Bailiff, claiming Bailiff's failure to notify Terrell's state-appointed attorney prior to the interview violated his Sixth Amendment rights. A hearing on the motion occurred on November 1, 2004. At the hearing, Bailiff testified he had no knowledge of Terrell's state court proceedings the previous day and Terrell did not inform him a state attorney had been appointed. Moreover, Terrell did not request an attorney when he was informed of that right prior to the interview. Bailiff further testified that all of his investigations and cases involved federal, not state, conspiracy charges. Turning to the substance of the interview, Bailiff stated the telephone numbers Terrell gave him were the same as those obtained from the cell phone in Terrell's possession at the time of his arrest. As a result, Terrell gave no information in the interview that was not acquired elsewhere.

---

[2]Bailiff also met with co-defendant Vercher, who answered personal history questions but declined to comment further.

On January 11, 2005, the district court issued its written order denying, *inter alia*, Terrell's motion to suppress his statements. The court determined Terrell's Sixth Amendment rights had attached for the purposes of his state charges, but concluded the federal conspiracy charge was a separate offense to which no right to counsel had attached. Because the *Miranda* warnings Bailiff provided were adequate and effective in relation to the federal conspiracy charge, and Terrell voluntarily waived those rights, the court concluded "Bailiff was free to interrogate him regarding that offense." (R. Vol. 1, Doc. 132 at 8). The court rejected Terrell's argument that the statement could not be used in his trial for the possession charge, finding any questions regarding the possession charge were merely a prequel to the purpose of the investigation, securing the identities of co-conspirators "on the sending and receiving ends." (*Id.*) As a result, Bailiff was allowed to recount Terrell's statement during Terrell's jury trial. The trial began February 9, 2005, and on February 16, 2005, the jury returned a verdict of guilty on both counts. The court ordered the preparation of a presentence report and scheduled sentencing for May 16, 2005.

Terrell raised several objections to the presentence report. At issue here is the district court's denial of a downward adjustment due to his role in the offense under USSG §3B1.2 (Mitigating Role). Terrell also claims the district court's application of the remedial portion of the Supreme Court's ruling in *Booker* to his case violates the *ex post facto* clause because he committed his crime prior to

*Booker*.  We address each issue in turn.

II.     Discussion

     A.     Motion to Suppress

In reviewing the district court's order granting or denying a motion to suppress, we accept the district court's factual findings unless clearly erroneous and consider the evidence in the light most favorable to the district court's determination.  *United States v. Toles*, 297 F.3d 959, 965 (10th Cir. 2002).  We review legal conclusions de novo.  *United States v. Baez-Acuna*, 54 F.3d 634, 636 (10th Cir. 1995).

Terrell complains that Bailiff's questioning without the presence of Terrell's appointed lawyer on the state cocaine possession charge, violated his Sixth Amendment right to counsel.[3]  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  In *Michigan v. Jackson,* the Supreme Court held that once the right to counsel has attached and been invoked, any subsequent waiver during a police-initiated custodial interview is ineffective. 475 U.S. 625, 636 (1986).  However, five years later, in *McNeil v. Wisconsin*, the Court explained:

> The Sixth Amendment right [to counsel] . . . is offense specific.   It cannot be invoked once for all future prosecutions, for it does not

---

[3]  The government suggests Terrell may not have preserved this issue because he failed to lodge a contemporaneous objection to Bailiff's testimony at trial.  However, it appears during a pre-trial conference defense counsel requested and was granted preservation of this issue without contemporaneous objection.

attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

501 U.S. 171, 175 (1991) (citations and internal quotation marks omitted). The Court added, "[J]ust as the right is offense specific, so also its *Michigan v. Jackson* effect of invalidating subsequent waivers in police-initiated interviews is offense specific." *Id*. As a result, the Court held a defendant's statements to police officers regarding uncharged offenses were admissible notwithstanding the attachment of the Sixth Amendment right to counsel on other charged offenses. *Id*. at 176.

In *Texas v. Cobb*, the Court considered "whether the Sixth Amendment right to counsel extends to crimes that are 'factually related' to those that have actually been charged . . . ." 532 U.S. 162, 167 (2001). In *Cobb*, the defendant admitted to the commission of a home burglary but denied any knowledge of the disappearance of a woman and child who lived in the home. After being charged with burglary and having counsel appointed, the defendant told his father he had murdered the woman and child. When the father shared this information with police, the officers interviewed the defendant regarding both incidents, resulting in the defendant's confession to the murders. *Id*. at 165. On appeal, he argued that his confession should have been suppressed because his counsel for the burglary charge was not notified of the interview. *Id*. at 166.

The Court rejected the "factually related" test and held the right to counsel only attaches to uncharged offenses that constitute the "same offense" as the one for which the accused has been formally charged. *Id.* at 172-73. The Court applied the double jeopardy "same offense" test, first articulated in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), to determine whether two state offenses were the same for purposes of the Sixth Amendment right to counsel. *Cobb*, 532 U.S. at 173. Under the *Blockburger* test, "where the same act or transaction constitutes a violation of two distinct statutory provisions, [it is one offense unless] each provision requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304. Once the Sixth Amendment right to counsel attaches, the right includes offenses which would be considered the same offense under the *Blockburger* test, even though the additional offenses are uncharged. *Cobb*, 532 U.S. at 173.

In the instant case, the parties agree and the district court concluded the state charge of possession of cocaine with the intent to distribute would be the same offense as Count One of the federal indictment under the *Blockburger* test. Thus, Terrell contends *Cobb* precludes the introduction of his statements at his trial on Count One of the indictment. He further claims that because Count Two, conspiracy to possess with intent to distribute, incorporates every element of the underlying offense, the conspiracy is also the "same offense" under *Blockburger*. The government disagrees, claiming the requirement of an agreement under the

conspiracy count renders the two charges separate offenses. Therefore, according to the government, Terrell's Sixth Amendment right had not attached as to the conspiracy count at the time Bailiff conducted his interview.

We agree with the government. It is well-settled "that a substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes." *United States v. Felix*, 503 U.S. 378, 389 (1992). A conspiracy charge requires only proof of an agreement to commit the offense, not possession of an illegal substance.[4] On the other hand, a possession charge requires (obviously) proof of possession, and no proof of an agreement is necessary.[5] Therefore, the *Blockburger* test requiring *each* charge to contain a separate proof of fact is satisfied here.[6] In addition, Bailiff's purpose was not to

---

[4] "A conspiracy in violation of 21 U.S.C. § 846 consists of four elements[:] . . . (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." *United States v. Williams*, 374 F.3d 941, 949 n.10 (10th Cir. 2004) (quoting *United States v. Dozal,* 173 F.3d 787, 797 (10th Cir. 1999)).

[5] "To establish a violation of 21 U.S.C. § 841(a)(1), the Government must prove the defendant: (1) possessed the controlled substance; (2) knew he possessed the controlled substance; and (3) intended to distribute or dispense the controlled substance." *United States v. Bowen*, 437 F.3d 1009, 1014 (10th Cir. 2006) (quoting *United States v. McKissick,* 204 F.3d 1282, 1291 (10th Cir. 2000)).

[6] Accordingly, we need not reach the government's invitation to apply "the dual sovereignty doctrine," wherein double jeopardy is not invoked when a defendant's conduct violates the laws of two separate sovereigns. *See, e.g., Heath v. Alabama,* 474 U.S. 82, 87-93 (1985); *Abbate v. United States,* 359 U.S. 187 (1959) (holding that a federal prosecution is not barred by a prior state prosecution of the same person for the same acts).

question Terrell regarding the possession charge. Rather, the point of his investigation was to discover the existence and extent of a conspiracy. Although Bailiff stated he would have also liked Terrell to admit to knowledge and possession of the drugs, we agree with the district court this inquiry is analogous to the situation in *Cobb*. As the district court noted, "in order to get to the murders that were being investigated, the officers [in *Cobb*] had to question the defendant about the burglary for which he was then represented by counsel." (Vol. 1, Doc. 132 at 8); *see Cobb*, 532 U.S. at 169-71. Similarly, Bailiff had to question Terrell about his possession of the drugs in order to get to the conspiracy. Consequently, while Terrell's statements might be inadmissible at his trial on the state possession charge, his Sixth Amendment right to counsel was not violated in this case.

B.    Adjustment Under USSG §3B1.2

Terrell argues the district court erred in denying his request for a base offense level reduction under §3B1.2 of the Guidelines on the ground he was either a minimal or a minor participant. To determine whether the district court erred in its application of the Guidelines, we review the district court's factual findings for clear error and its legal conclusions regarding the application of the guidelines *de novo. United States v. Mares*, 441 F.3d 1152, 1159-60 (10th Cir. 2006). "A trial court's findings concerning a defendant's role in a particular offense are treated by an appellate court as factual findings, which are subject to

-10-

deferential review under the clearly erroneous standard." *United States v.*

*Santistevan,* 39 F.3d 250, 253 (10th Cir. 1994) (quotations and citations omitted).

A district court's finding of fact will stand unless it is "without factual support in

the record, or if after reviewing the evidence we are left with the definite and firm

conviction that a mistake has been made." *Id*. at 253-54 (citations and quotations

omitted ). "It is the defendant's burden to establish, by a preponderance of the

evidence, his entitlement to an offense level reduction under § 3B1.2." *Id*. at 254.

The district court may grant a base offense level reduction if it finds a

defendant relatively less culpable than other participants in the offense.[7] USSG

§3B1.2. It allows the court to consider a four level decrease in the offense level

for "minimal" participation and a two level decrease for a "minor" participant,

with the option of awarding a three level decrease for those "falling between."

USSG §3B1.2(a), (b). Application note 4 to §3B1.2 provides that a "minimal

participant" "is intended to cover defendants who are plainly among the least

culpable of those involved in the conduct of a group" and is an adjustment to be

"used infrequently." Application note 5 explains that a "minor participant" is

"one who is less culpable than most other participants." Application note 3(A)

---

[7] We apply the November 1, 2002 edition of the Sentencing Guidelines Manual. Terrell was arrested on November 5, 2002. The guidelines in effect on the date of arrest limited the base offense level in the case of a minor or minimal participant to 30. *See* USSG §2D1.1(a)(3) (2002). This beneficial limitation was eliminated from the Guidelines via Amendment 668 effective November 1, 2004.

states the adjustments are generally "for a defendant . . . [who is] substantially less culpable than the average participant."

In the present case, Terrell claims the district court erred in failing to compare his culpability with that of the conspiracy's distributors. He also claims there is no evidence to support the district court's finding that he recruited another driver, removing him from the least culpable in that category of participants. Terrell is correct. There is no evidence to support he recruited another driver. However, the district court found "even without [the] additional act or participation of recruiting . . . [Terrell] would be equally culpable." (Vol. 11 at 7-8). We find no error in the district court's conclusion. Even if Terrell was merely a driver or courier, our precedents reject the argument that this fact alone compels the district court to grant a base offense level reduction under §3B1.2. See *Mares*, 441 F.3d at 1159-60; *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1277-78 (10th Cir.), *cert. denied*, 543 U.S. 59 (2004); *United States v. Lockhart*, 37 F.3d 1451, 1455 (10th Cir. 1994). Terrell cites no case law to the contrary.

While Terrell attempts to place himself in the shadow of the lead participants in the drug conspiracy, his actions evidence more than a one or two time, poorly paid, short turn-around delivery. We recently considered the same argument Terrell presents here. In *Mares*, the defendant was arrested twice for bringing marijuana, hidden in the gas tank of a car, over the border in New

Mexico and Texas and allegedly traveling to the Ruidoso, New Mexico, area. *Mares*, 441 F.3d at 1155. Although the defendant argued she did not know of the presence of the drugs in the first instance and was forced to transport the drugs at the time of her second arrest, the district court refused to decrease her offense level pursuant to her role as a minor participant. The district court noted its tendency to consider a decrease when the drugs were transported in "a very short turn-around trip for which [the defendant is] usually not paid very much" but found, "[i]n this instance there is more planning than is normal, and for that reason I don't think that minor participation is appropriate." *Id*. at 1160. We affirmed, concluding, "[w]hen combined with the evidence that she had been 'hired' for the 2002 drug run, the court did not err in finding the minor participant adjustment inapplicable." *Id*.

Here, Terrell is clearly not a "minimal participant." The evidence established repeated instances of his involvement in delivering controlled substances from Las Vegas, Nevada, to the St. Louis, Missouri, area. Nor is he *substantially* less culpable than the *average* participant. The documentary evidence at trial established at least five trips between Las Vegas and St. Louis carrying approximately five kilograms of cocaine. Terrell received $700.00 to $1,000.00 per trip. In addition, the drugs were found carefully hidden in the door compartment of the rented van, evidence of studied planning. Finally, the frequent telephone calls between the conspirators and Terrell's home demonstrate

-13-

his "knowledge . . . concerning the scope and structure of the enterprise and the activities of others involved in the offense." *United States v. Calderon-Porras*, 911 F.2d 421, 423 (10th Cir. 1990). The district court did not abuse its discretion in denying Terrell a minor participant adjustment.

C.      Ex Post Facto Clause and Due Process

After Terrell committed the federal offenses, but prior to sentencing, the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. 220 (2005). In *Booker,* one majority held that under the Sixth Amendment "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 244. A second majority issued *Booker*'s "remedial" holding, "correct[ing] the Sixth Amendment error created through mandatory application of the Sentencing Guidelines by severing the statutory section that required district courts to sentence within the Guidelines range." *United States v. Payton,* 405 F.3d 1168, 1172-73 (10th Cir. 2005) (*citing Booker*, 543 U.S. at 245). As a result, after *Booker*, the guidelines are still in effect, but merely advisory.

Terrell wants it both ways. He contends *Booker's* constitutional holding — mandatory enhancements based on judge-found facts violate the Sixth Amendment — applies to his case. However, he also argues that applying the remedial holding and allowing the district court to sentence him based on judge-

found facts under an advisory guideline scheme for an offense that pre-dated *Booker* would violate the Ex Post Facto Clause. He claims the district court's consideration of eighty-six kilograms of cocaine (an amount not found by the jury) is error. Article I of the United States Constitution provides that neither Congress nor the states shall pass an "ex post facto Law." *See* U.S. Const. art. I, § 9, cl. 3; art. I, § 10, cl. 1. Although the Ex Post Facto Clause limits the legislature instead of the judiciary, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Rogers v. Tennessee,* 532 U.S. 451, 456 (2001). "An Ex Post Facto violation occurs only when a law retroactively alters the definition of crimes or increases the punishment for criminal acts." *United States v. Andrews*, 447 F.3d 806, 809 (10th Cir. 2006) (internal quotation and citation omitted). We easily dispose of Terrell's argument as every circuit, including this one, has considered and rejected it. *United States v. Rines*, 419 F.3d 1104, 1106-07 (10th Cir. 2005) ("We decline Defendant's invitation to hold that the Supreme Court ordered us to violate the Constitution . . . . The only difference between the *Booker* regime under which his sentence is

-15-

determined and the regime he would have anticipated at the time of his offense is that the guidelines are not mandatory."), *cert. denied*, 126 S. Ct. 1089 (2006).[8]

AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

[8] *See also United States v. Perez-Ruiz*, 421 F.3d 11, 15 (1st Cir. 2005), *cert. denied*, 126 S.Ct. 1092 (2006); *United States v. Fairclough*, 439 F.3d 76, 79 (2d Cir.), *cert. denied*, 126 S.Ct. 2915 (2006); *United States v. Pennavaria*, 445 F.3d 720, 724 (3d Cir. 2006); *United States v. Davenport*, 445 F.3d 366, 369 (4th Cir. 2006); *United States v. Charon*, 442 F.3d 881, 893 (5th Cir. 2006); *United States v. Richardson,* 437 F.3d 550, 555 (6th Cir. 2006)*; United States v. Hale*, 448 F.3d 971, 988 (7th Cir. 2006)*; United States v. Counce,* 445 F.3d 1016, 1019 (8th Cir. 2006); *United States v. Staten*, 450 F.3d 384, 389 (9th Cir. 2006); *United States v. Thomas*, 446 F.3d 1348, 1354 (11th Cir. 2006); *United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006).