**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0821n.06

08-1610

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Dec 22, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DWIGHT JEROME LATHAM, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

**PER CURIAM.**   The defendant, Dwight Latham, was convicted by a jury of conspiracy to distribute and/or possess with intent to distribute 50 grams or more of crack cocaine.   Because Latham had previously been convicted of two other felony drug-trafficking offenses in Michigan state court, the district judge imposed a mandatory life sentence on the defendant, under 21 U.S.C. § 841(b)(1)(A).  On appeal, Latham contends (1) that the indictment returned against him was constructively amended when the district judge gave the jury faulty instructions; (2) that the evidence was insufficient to support the conspiracy conviction; and (3) that one of his two prior convictions should not have been considered a "felony drug offense" justifying imposition of a mandatory life sentence.

Reviewing these allegations for plain error and for a manifest miscarriage of justice, we find none and, therefore, affirm the district court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

At Latham's trial, several witnesses testified regarding the defendant's activities in a known drug-trafficking area of Grand Rapids, Michigan. Some noted that they had purchased small amounts of crack cocaine from Latham on numerous occasions. Others offered testimony that the government now portrays as evidence of much more than mere buyer/seller transactions. For instance, Rovell Woldemichael told the jurors that he had known Latham for a couple of years and that he and the defendant often sold crack cocaine from the same area of town. Woldemichael testified that he did not work for Latham but, rather, was an independent dealer who obtained the crack cocaine he sold to others from various individuals in the area. However, he did say that on three or four occasions when his own drug supply became depleted, he bought a $20 rock of crack cocaine from the defendant for resale. Moreover, Woldemichael presumed that Latham knew that Woldemichael would resell the crack cocaine purchased from the defendant because Woldemichael himself was not a crack user.

Likewise, Hayward Welch testified that he routinely sold crack cocaine in the same neighborhood as did Latham. Welch typically obtained his drugs from family members,

but he also purchased crack cocaine from the defendant when Welch's other suppliers were not available. Eventually, Welch began making crack sales from the same crack house used by Latham for some of his sales. The defendant generally acquiesced to Welch's resales of Latham's crack cocaine from the same location but on occasion, the defendant had the owner of the house, Linda Davis, ask Welch to leave the premises because "Mr. Latham get mad sometimes because we was taking his money."

Linda Davis, a crack addict herself, testified that she purchased small amounts of crack from the defendant and that the defendant also occasionally offered her a rock of crack without payment or shared a marijuana blunt with her. Davis would often break the rocks of crack she received into smaller amounts and sell them herself in order to obtain cash. In fact, if an individual sought to purchase any amount of crack cocaine worth less than ten dollars, Latham would direct that person to Davis and limit his own sales to individuals looking for more expensive purchases of the drug.

Rick Kenney, a Grand Rapids businessman and a crack addict, testified regarding his dealings with defendant Latham. Kenney stated under oath that he purchased $15,000 to $20,000 worth of crack cocaine a year, estimating that almost half of it came from the defendant, and that his purchases were for personal use rather than resale. However, he also explained that on three occasions when he had visited the defendant to purchase crack cocaine, Latham had none for sale. At those times, Kenney said, he

would have the defendant drive with him around the Grand Rapids area until Latham could purchase crack from another dealer to sell to Kenny.

Over time, Kenney also convinced one of his neighbors, Kenneth Beld, to try smoking crack cocaine. Once Beld began using the drug, he purchased crack from Kenney until Kenney introduced him to the defendant, and thereafter Beld bought directly from Latham. Beld estimated that he eventually made 15 to 20 purchases from the defendant, totaling roughly $2,000 to $3,000. Again, however, the witness claimed under oath that all such purchases were for his personal use only.

At the close of the proof, the jurors deliberated on the two counts of the indictment still before them,[1] "conspiracy to distribute and to possess with intent to distribute cocaine base and marijuana" and "felon in possession of a firearm." The jury eventually returned a form indicating a guilty verdict on the conspiracy count, with an additional finding that the conspiracy involved more than 50 grams of cocaine base but no marijuana, and a not-guilty verdict on the felon-in-possession charge. Because of Latham's previous criminal convictions, the district court sentenced the defendant to a mandatory life term in prison. Prior to doing so, however, the judge stated, "Left unconstrained, the likelihood that the Court would give a life sentence is remote. I would not be giving a life sentence had I not

---

[1]A third count of the superseding indictment that charged Latham with using, carrying, and discharging a firearm during and in relation to a crime of violence was voluntarily dismissed prior to trial.

had the statute passed by Congress to enforce, but it is my duty to enforce it and, therefore, I intend to do so." Latham now appeals from that judgment.

## **DISCUSSION**

### 1. **Constructive Amendment of Indictment**

Defendant Latham contends that the jury instructions given by the district judge regarding the conspiracy charge constructively amended the indictment and thereby violated his Fifth Amendment right not to "be held to answer for . . . [an] otherwise infamous crime, unless on . . . indictment of a grand jury." Specifically, he points to Count I, which charged that:

> Between on or about an unknown date in 2005 and continuing through in or about June 2007, in Kent County, in the Southern Division of the Western District of Michigan, the defendant . . . did combine, conspire, confederate, and agree with other persons both known and unknown to the Grand Jury, to knowingly, intentionally and unlawfully distribute and possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base (crack), a Schedule II controlled substance, and a quantity of marijuana, a Schedule I controlled substance.

In the jury instructions, however, the district court did not track the language in the indictment referring to a conspiracy involving the distribution of crack *and* marijuana. Instead, the district judge charged the jury that the defendant could be found guilty of conspiracy if he agreed with another person to distribute or possess with intent to distribute "cocaine base *and/or* marijuana." (Emphasis added.) According to Latham, the

disjunctive jury instruction broadened the basis for a conviction beyond what the indictment alleged. In other words, rather than being subject to conviction of conspiracy only if he agreed with another person to distribute both 50 grams of crack *and* a quantity of marijuana, under the instruction as given, Latham could be convicted of distributing crack cocaine *or* the marijuana *or* both.

"[W]hen the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment," we will find that the charging document has been constructively amended. *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986). Such amendments, moreover, "are deemed prejudicial per se." *United States v. Burkhart*, 682 F.2d 589, 591 (6th Cir. 1982).

Ordinarily, we review *de novo* the legal question of whether an indictment has been constructively amended by proof or by the jury instructions. *See United States v. Budd*, 496 F.3d 517, 528 (6th Cir. 2007), *cert. denied*, 129 S.Ct. 48 (2008). If, however, the defendant fails to object at trial to the allegedly improper jury instruction, we review the appellate challenge only for plain error. *See id.* In doing so, we abide by the guidance offered by the United States Supreme Court in *United States v. Olano*, 507 U.S. 725, 732 (1993). Consequently, our analysis is comprised of four distinct components:

> First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings.

*United States v. Thomas*, 11 F.3d 620, 630 (6th Cir. 1993).

In this instance, not only did the defendant fail to object to the jury instructions that he now contends prejudiced him, but Latham, through his attorney, actually proposed instructions that contained substantially the same language about which he now complains. In his suggested instruction delineating the elements of the criminal conspiracy, the defendant requested that the district court charge the jury that the drug conspiracy must, in part, "involve[ ] at least 50 grams of a substance or mixture containing cocaine base (crack cocaine) *or* a quantity of marijuana."[2] (Emphasis added.)

Nevertheless, Latham now insists that such "invited error" does not necessarily "foreclose relief when the interests of justice demand otherwise." *United States v. Barrow*,

_____

[2]The government's proposed jury instruction on the elements of the conspiracy offense also failed to track the language of the indictment. The prosecution suggested that the district court explain to the jury that one element of the charged crime requires proof that "two or more persons conspired, or agreed, to commit the crime of possession with intent to distribute or to distribute cocaine base (commonly referred to as 'crack' or 'crack cocaine'), *and/or* marijuana." (Emphasis added.)

118 F.3d 482, 491 (6th Cir. 1997). Indeed, "where 'the government [i]s as much a[t] fault for inviting the error as the defendant' and 'the defendant . . . is claiming that his constitutional rights have been violated,' the interests of justice are not served by a strict application of the waiver doctrine." *United States v. Savoires*, 430 F.3d 376, 381 (6th Cir. 2005) (quoting *Barrow*, 118 F.3d at 491). Even if we chose to address the defendant's constructive amendment contention, however, our inquiry into this alleged error must still be confined to a plain error analysis given the lack of objection to the jury charge given.

Faced with such review, the defendant is stymied at the first step of the examination framework because Sixth Circuit precedent provides that an instruction such as the one given by the district judge in this case is not necessarily erroneous. *Budd*, 496 F.3d at 529; *Hathaway*, 798 F.2d at 913. Latham directs our attention to three out-of-circuit decisions -- *United States v. Narog*, 372 F.3d 1243 (11th Cir. 2004); *United States v. Weissman*, 899 F.2d 1111 (11th Cir. 1990); and *United States v. Perez-Ruiz*, 421 F.3d 11 (1st Cir. 2005) -- that he contends support his view that an indictment worded in the conjunctive requires supporting proof of *all* included objects or concepts. None of these cases circumvents our precedents, which are confirmed by Supreme Court case law.

Two of the decisions cited by Latham are, however, easily distinguished from the scenario presented by this appeal. In *Narog*, for example, the four defendants were charged with "conspiracy to possess and distribute pseudoephedrine 'knowing and having

reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, that is, methamphetamine.'" *Id.* at 1246.  As the Eleventh Circuit noted, however:

> The district court's charge to the jury tracked the indictment to the extent that it required the jury to find that defendants knew or had reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, and added (both orally and in the written instructions given to the jury) that "methamphetamine is a controlled substance within the meaning of the law."  The jury was clearly confused . . . .

*Id.*  When the jury presented the court with a written question asking whether it must find that the defendants had reasonable cause to believe that the pseudoephedrine would be used to make "*specifically* methamphetamine to be guilty," the district judge answered in the negative, explaining that "[w]hat the government must prove . . . is that a Defendant knew or had reasonable cause to believe that the pseudoephedrine would be used to manufacture some controlled substance." *Id.* at 1247.  The Eleventh Circuit rectified that error and reversed the convictions.  In doing so, the court explained:

> By instructing the jury that it only needed to find that defendants knew or had reasonable cause to believe that the pseudoephedrine would be used to make any controlled substance, the district court unconstitutionally broadened the crimes charged in the indictment.  The jury may well have convicted appellants of believing that the pills would be used to manufacture a controlled substance other than the one specified therein, although there was no evidence of such.

*Id.* at 1249.

Likewise, the Eleventh Circuit's decision in *Weissman* was driven by the need to ensure that the defendant was not convicted of a crime not contained within the indictment. In that case, the grand jury indicted Weissman on charges under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 - 1968. The indictment further defined the illegal enterprise involved in the criminal activity as "a group of individuals associated in fact known as the DeCavalcante Family of La Cosa Nostra." *Weissman*, 899 F.2d at 1112. Yet, when presented with a question from the deliberating jury whether it was necessary for the fact-finders to determine "that the enterprise was the DeCavalcante Family," *id.* at 1113, the district court responded, "While you don't have to conclude it was the DeCavalcante family, you do have to conclude that there was such an enterprise which is within the definitions that I have already given." *Id.* The appellate court again took issue with the broad interpretation of the indictment afforded by the district court's jury charge, noting that "[u]nder the instructions given here, the jury may well have convicted these defendants of being involved with an enterprise other than the one charged in the indictment." *Id.* at 1116. Consequently, the Eleventh Circuit reversed Weissman's conviction and remanded the matter for further proceedings.

Finally, *Perez-Ruiz* does not stand for the proposition for which the defendant cites it. In that First Circuit litigation, the defendant was charged with conspiring to distribute heroin, cocaine, and cocaine base (crack). Both the indictment and the trial testimony, however, also referred to incidents in which Perez-Ruiz was also involved with marijuana. Nevertheless, the marijuana incidents "were not charged as objects of the conspiracy" and

"the jury instructions thereafter expressly identified the conspiracy at issue as an agreement to distribute heroin, cocaine and cocaine base and did not include marijuana." *Perez-Ruiz*, 421 F.3d at 14. As the court noted, "there is no realistic chance that, in convicting under this indictment and these instructions, the jury constructively amended the indictment by convicting Perez solely for a marijuana conspiracy – itself never charged." *Id.* Thus, unlike the situations presented in *Narog* and *Weissman*, there was no danger that the jury convicted the defendant of a crime for which he was not indicted, in large part because the instructions to the jury on the conspiracy charge mentioned only the three drugs (heroin, cocaine, and cocaine base) mentioned in the charging document.

In citing *Perez-Ruiz*, defendant Latham focuses, however, on the First Circuit's language that "strictly speaking, [the jury] had to conclude that all three hard drugs were objects of the conspiracy because the indictment charged in the conjunctive." *Id.* From that statement, Latham extrapolates to the conclusion that his jury, in order to convict, must have found a conspiracy to distribute both crack cocaine *and* "a quantity of marijuana" because the indictment against him also charged those conspiracy objects "in the conjunctive."

Despite the cited language from *Perez-Ruiz*, we recognize that the United States Supreme Court's decision in *United States v. Miller*, 471 U.S. 130 (1985), is to the contrary. In *Miller*, the justices explained:

- 11 -

> The Court has long recognized that an indictment may charge numerous offenses or the commission of any one offense in several ways. *As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.* Indeed a number of longstanding doctrines of criminal procedure are premised on the notion that each offense whose elements are fully set out in an indictment can independently sustain a conviction.
>
> . . . Convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment.

*Id.* at 136 (emphasis added) (citations omitted). *See also Budd*, 496 F.3d at 528-29 (citing *United States v. Barrios-Perez*, 317 F.3d 777, 779-80 (8th Cir. 2003) ("finding no constructive amendment where the drug-conspiracy indictment was phrased in the conjunctive, but the court instructed the jury in the disjunctive")); *Hathaway*, 798 F.2d at 913 ("an impermissible variance does not occur when, although an indictment charges several acts in the conjunctive, the district court charges the jury in the disjunctive")).

In this case, the grand jury indicted Latham for conspiracy to distribute and conspiracy to possess with intent to distribute illegal drugs -- crack cocaine and marijuana. The jury convicted him of conspiring to distribute and to possess with intent to distribute only crack cocaine. Because that offense was clearly encompassed by the indictment against the defendant, Latham is not being punished for actions that might well be beyond the reach of the charging document. The jury instructions that referred to crack cocaine and marijuana in the disjunctive thus did not constructively amend the defendant's

indictment so as to deprive him of his Fifth Amendment right to grand jury consideration of his situation. Because offering a jury instruction that discussed a crime fully included within the parameters of the indictment cannot be considered error, that charge also cannot constitute the plain error necessary for Latham to prevail on this claim.

## 2. **Sufficiency of the Evidence**

Latham next maintains that the government failed to adduce sufficient evidence to support the conspiracy conviction. Ordinarily, we would analyze such an allegation of error under the familiar sufficiency-of-the-evidence standard, viewing the trial testimony and exhibits in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because the defendant failed to move for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, however, we must affirm the conviction absent a manifest miscarriage of justice, which occurs only when the trial record is "devoid of evidence pointing to guilt." *United States v. Villarce*, 323 F.3d 435, 438 (6th Cir. 2003) (citations omitted).

The defendant insists that there is just such a paucity of evidence in this case, in part because the prosecution failed to establish that Latham conspired with anyone to purchase crack cocaine, because the defendant had no "regular" sources of crack, because the government offered no evidence that Latham provided drugs without prior

payment or made large-quantity sales, and because the defendant engaged only in discrete, arms'-length transactions with his customers. In order to establish Latham's participation in a drug conspiracy, the government must show, by either direct or circumstantial evidence: "(1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Gunter*, 551 F.3d 472, 482 (6th Cir.) (citation omitted), *cert. denied*, 130 S.Ct. 194 (2009). A formal or express agreement is not necessary, but a simple buyer-seller relationship alone is insufficient to establish a drug conspiracy; however, "evidence of repeated purchases can." *See id.* (citing *United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003)).

In light of the extremely deferential review standard at play here given the defendant's failure to file a Rule 29 motion, we conclude that Latham cannot prevail on his sufficiency claim because the appellate record is plainly not "completely devoid of evidence" of guilt. In fact, trial testimony showed that Latham made numerous sales to individuals that the defendant knew, or should have known, were then resizing and reselling the "product" that he was providing. Not only was evidence adduced showing that Latham knew that one of his purchasers, Hayward Welch, did not use crack cocaine, but testimony established that Latham and Welch actually sold crack in the same location after Welch would buy drugs from the defendant. Other testimony from Rovell

Woldemichael also indicated that Latham saw Woldemichael reselling crack he had purchased from the defendant on various occasions. Also, Linda Davis testified that she allowed Latham to sell drugs from her home in exchange for small quantities of crack and that she and Latham had an understanding that Latham would refer customers seeking only ten-dollar purchases to Davis so that she could make small amounts of money to support herself and her drug habit.

The government's proof of conspiratorial activity in this case is, admittedly, not overwhelming. Unfortunately for Latham, however, well-established law in the circuit does not require the government to meet such an onerous burden on appeal in a situation such as this. Because the defendant failed to seek a judgment of acquittal at the close of the trial testimony, he must show that the record is without any evidence of his guilt. Latham cannot do so given the testimony that he knowingly supplied crack cocaine to individuals he knew would resell those drugs and given the testimony that he specifically directed some individuals to purchase smaller quantities of crack from a person to whom Latham sold drugs and from whom the defendant received the benefit of a crack house cover for his sales. Latham, therefore, fails in his challenge to the sufficiency of the convicting evidence.

### 3. **Validity of Defendant's Life Sentence**

In a final issue, the defendant challenges the propriety of his life sentence, insisting that one of the predicate convictions used to enhance his punishment cannot be

considered a "felony drug offense" under a reasonable construction of applicable statutes. But, again, because Latham failed to lodge a timely objection to his sentence before the district court, our review is now limited to an examination for plain error only. *See United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004) ("If a party does not clearly articulate any objection and the grounds upon which the objection is based [when prompted to do so], then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal.").

Pursuant to the applicable provision of 21 U.S.C. § 841(b)(1)(A), "[i]f any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ." A "felony drug offense" is, moreover, defined in the United States Code as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct *relating to* narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44) (emphasis added). Latham does not contest one of his prior state drug convictions, a June 2001 conviction for possession with intent to distribute a controlled substance. He insists, however, that a state court conviction in July 2002 for possession with intent to distribute an *imitation controlled substance* does not constitute a prior "felony drug offense" because that

conviction involved an "imitation" substance, not one of the actual drugs listed in 21 U.S.C. § 802(44).[3]

In support of this contention, Latham directs us to a district court opinion from the Western District of Virginia, in which the court held that a state court conviction for felony possession with intent to distribute an imitation controlled substance, prohibited by Virginia Code Annotated § 18.2-248(A), was not a felony drug offense for purposes of sentencing under U.S.C. § 802(44). *See United States v. Gardner*, 534 F. Supp.2d 655 (W.D. Va. 2008), *aff'd*, No. 08-4230, 2009 WL 489997 (4th Cir.), *cert. denied*, 130 S.Ct. 125 (2009). By the same measure, the defendant is forced to concede that an Iowa district court has held to the contrary in *United States v. Brown*, No. 06-CR-1028-LRR, 2007 WL 1498472 (N.D. Iowa May 21, 2007).

In that case, the district judge emphasized that the definition of "felony drug offense" in section 802(44) was not limited to offenses *involving* narcotic drugs, marijuana, anabolic steroids, or depressant or stimulant substances, but included offenses *relating to* such substances. Citing our decision in *United States v. Spikes*, 158 F.3d 913, 932 (6th Cir. 1998), the district court in *Brown* recognized that "the phrase 'relating to' is very broad and encompasses a wide range of potential conduct" and rationalized that:

---

[3]Pursuant to the relevant provisions of M.C.L.A. § 333.7341(1)(b), an "imitation controlled substance" is "a substance that is not a controlled substance . . . [but] which by dosage unit appearance including color, shape, size, or markings, and/or by representations made, would lead a reasonable person to believe that the substance is a controlled substance."

> Congress considers offenses involving controlled substances or counterfeit substances to be drug offenses. Obviously, when a defendant delivers a counterfeit controlled substance, many of the dangers and harms to society that are present when "the real deal" is delivered are also present. There is no indication that Congress intended to give a sentencing break to those who distribute counterfeit substances.

*Brown*, 2007 WL 1498472, at *3.

The problem for the defendant in this case is not only the absence of controlling authority from either this court or the Supreme Court, neither of which has addressed the specific question that his life sentence raises, but also the fact that the two district courts that have ruled on the issue have taken positions that are diametrically opposed. Thus, the defendant here cannot prevail simply by arguing that the analysis in the *Gardner* opinion is stronger and more cogent than that in *Brown*. The very existence of these two non-binding, contradictory opinions is sufficient to establish, *ipso facto,* that any error in this case cannot be deemed "plain" because, under the applicable standard of review, any error is not "clear under current law." *Barrow*, 118 F.3d at 492 (quoting *Olano*, 507 U.S. at 734).

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court in its entirety.