**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 24, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 05-2117

MARTHA CECILIA MARES,

Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-04-310-JP)**

Marc H. Robert, Assistant Federal Public Defender, Las Cruces, New Mexico, for
Appellant.

Laura Fashing, Assistant United States Attorney, Albuquerque, New Mexico, for
Appellee.

Before **LUCERO**, **McWILLIAMS**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

Defendant-Appellant Martha Mares was arrested at a border checkpoint on
December 14, 2002, while driving a car carrying 32.5 kilograms of marijuana
concealed in the gas tank. Prior to trial for this offense, on December 11, 2003,

Mares was again arrested at a border checkpoint carrying marijuana concealed in her car's gas tank. The district court admitted the evidence of the subsequent arrest at trial under Fed. R. Evid. 404(b).

Mares now appeals her jury conviction of possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and the 51-month sentence imposed by the district court. Mares argues that the district court erred (1) in admitting evidence of a subsequent arrest for drug trafficking that occurred nearly a year after the crime for which she was charged, and (2) in imposing an excessive sentence. Because the district court did not abuse its discretion in admitting evidence of a subsequent crime under Fed. R. Evid. 404(b), and since Mares's 51-month sentence was reasonable, we AFFIRM the district court.

## I. Background

*The Two Arrests.* On December 14, 2002, Mares was arrested at a border checkpoint just south of Alamogordo, New Mexico as she attempted to enter the United States. Mares told U.S. Border Patrol agents the car belonged to a Mr. Alejandro Dominguez who was "kind of" her boyfriend and had loaned Mares the car so she, her friend, and her children could join him for a weekend of skiing in Ruidoso, New Mexico. (R. Vol. IV at 49, 77–78.) The car had temporary licence plates, and Mares produced a recent bill of sale for the vehicle. Border Patrol

agents noticed only one piece of luggage in the car and that none of the occupants had ski equipment, parkas or winter clothing. The combination of Mares's answers and her unusual circumstances caused Border Patrol agents to become suspicious.

After an inspection of the undercarriage of her vehicle revealed tool marks indicating that the gas tank had recently been removed or serviced, the Border Patrol agents requested, and Mares gave, consent to a search of her gas tank. The search revealed three metal canisters packed with 32.5 kilograms of marijuana and Mares was arrested. Mares told the agents she was completely unaware of the marijuana in the gas tank and was "stunned" by its discovery despite the fact that the containers occupied almost eighty percent of the gas tank. (R. Vol. IV at 151.)

On questioning, Mares said she did not know where Dominguez lived and that she "[thought she knew] his cell phone number" even though they had been "going out for about three weeks" and she was supposed to meet him in Ruidoso with his car. (Id. at 78.) After arresting Mares, authorities attempted to locate Dominguez using information from the bill of sale Mares provided. This effort was fruitless because none of the information on the bill of sale could be verified, and much of it, including Dominguez's Social Security Number, was fraudulent.

While awaiting trial, Mares was again arrested by the Border Patrol, this time at the Ysleta Port of Entry in El Paso, Texas, on December 11, 2003. As in her first arrest, three metal canisters of marijuana were found in the gas tank of the vehicle she was attempting to drive into the United States. This time, the canisters contained 43 kilograms of marijuana. Mares claimed that a Mr. Alejandro Dominguez had forced her into transporting this second load of marijuana after she confronted him about "us[ing]" her for the first load. However, she also admitted to Border Patrol agents that the same people who "hired" her for the first load had forced her to transport this second load. (R. Vol. IV at 38, 51-52, 116–17.) Mares pleaded guilty to this second offense.

*The Trial.* Mares maintained her innocence as to the first load of marijuana, and the case proceeded to trial in November 2004. Just before trial, Mares filed a motion in limine seeking to prevent the United States from introducing evidence of her second arrest under Fed. R. Evid. 403 and 404(b).[1] The district court ruled that the evidence was admissible under Rule 404(b):

> [It is] offered for proper purpose under Rule 404(b), to show, among other things, the common plan, knowledge, intent and absence of mistake or accident . . . . It's very similar, and the two incidences are very similar in nature in terms of the area in which they occurred, how the marijuana was packaged in metal containers, where they were in the vehicles and other things. . . . Obviously, it is prejudicial, but I

---

[1] The United States disclosed it intended to introduce evidence subject to Fed. R. Evid. 404(b) over two months prior to trial.

don't think it is unfairly prejudicial to the extent that the probative value is substantially outweighed . . . I will, if the defendant requests, give appropriate instruction to the jury. . .

(R. Vol. IV at 7.)  A jury found Mares guilty of possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D).

*Sentencing.*  The presentence report calculated Mares's base offense level as 22 on the basis of the amount of marijuana involved.  Upon the government's informal objection, the probation officer recommended increasing Mares's offense level by two for obstruction of justice because of her false testimony at trial.  Mares objected to this enhancement and also argued that she should have received a minor role adjustment under USSG § 3B1.2.

At her sentencing hearing, the district court found that Mares perjured herself at trial and, accordingly, increased her sentence by two levels for obstruction of justice.  The court also found that Mares was not entitled to a minor role adjustment because of the extensive planning involved and the distance she was willing to travel to traffic drugs.  As a result, Mares's total offense level was 24 and her criminal history category I, resulting in a guideline recommendation of 51-63 months.  The district court sentenced Mares to 51 months in prison to be followed by three years supervised release.

## II. Analysis

Mares argues the district court erred in two ways. First, she claims the court improperly admitted evidence at trial from her second arrest for drug transportation. Her second claim is that the court improperly rejected her role as a minor participant and then enhanced her sentence because it determined she committed perjury at trial. We disagree with both of her claims.

## A. Evidence of Subsequent Act under Rule 404(b)

We review the district court's admission of evidence under Fed. R. Evid. 404(b) for abuse of discretion. *United States v. Shumway*, 112 F.3d 1413, 1419 (10th Cir. 1997). We will not reverse a district court's ruling if "it fall[s] within the bounds of permissible choice in the circumstances" and is not "arbitrary, capricious or whimsical." *Id.*

### 1. Rule 404(b) Generally

Federal Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of . . . intent, . . . plan, knowledge, . . . or absence of mistake.

Our case law instructs courts to consider four factors in weighing the admissibility of evidence under Rule 404(b): (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests. *See Huddleston v. United States*,

485 U.S. 681, 691 (1988); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

Evidence is admitted for a proper purpose if allowed for one or more of the enumerated purposes in Rule 404(b). It is relevant if it tends to prove or disprove one of the elements necessary to the charged offense. *See* Fed. R. Evid. 401. The danger of unfair prejudice resulting from the evidence's admission must not substantially outweigh the probative value of the evidence under the balancing test of Fed. R. Evid. 403. *See United States v. Tan*, 254 F.3d 1204, 1211–12 (10th Cir. 2001) (in order for evidence to be inadmissible under Rule 403 the evidence's unfair prejudice must do more than "damage the [d]efendant's position at trial," it must "make[] a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged"). The limiting instruction must caution the jury to consider the evidence only for the limited purposes for which it is admitted and not as probative of bad character or propensity to commit the charged crime.

### 2. Subsequent Acts

It is settled in the Tenth Circuit that evidence of "other crimes, wrongs, or acts" may arise from conduct that occurs *after* the charged offense. Our cases have held that "[r]egardless of whether 404(b) evidence is of a prior or

subsequent act, its admissibility involves a case-specific inquiry that is within the district court's broad discretion." *United States v. Olivo*, 80 F.3d 1466, 1469 (10th Cir. 1996). Where the uncharged acts show motive, intent, or knowledge, they are admissible "whether the acts involved previous conduct or conduct subsequent to the charged offense, as long as the uncharged acts are similar to the charged crime and sufficiently close in time." *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

Subsequent acts evidence is particularly relevant when a defendant's intent is at issue. In *Olivo*, for example, the defendant was charged with arranging for the transportation of large amounts of marijuana on board his employer's trucking fleet. 80 F.3d at 1468. The marijuana was compressed, wrapped, dipped in tar, rewrapped and secreted in grocery boxes. Prior to trial, the defendant drove a vehicle containing a large amount of marijuana, and the marijuana was also compressed into blocks, wrapped several times and concealed inside grocery boxes. Although the subsequent act occurred over one year after the charged offense, we held that evidence of this crime was properly admitted under Rule 404(b) to show intent and planning. We further held that the length of time between the two incidents did not undermine its probative value. The events were of sufficient similarity to justify the district court's admission of the evidence under an abuse of discretion standard.

We have routinely upheld the admissibility of subsequent acts evidence in other cases. *See, e.g., Zamora*, 222 F.3d at 762 (evidence of subsequent robbery properly admitted under 404(b) to prove knowledge, intent and lack of mistake); *United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir. 1982) (evidence of robbery five weeks after charged robbery properly admitted under Rule 404(b) to prove identity); *United States v. Abreu*, 962 F.2d 1425 (10th Cir. 1992) (evidence of defendant's subsequent possession of cocaine relevant to prove intent in drug trafficking case).

Although generally admissible, subsequent conduct, just as prior conduct, must share similarity with the charged crime. *Zamora*, 222 F.3d at 762. It need not be identical. *Gutierrez*, 696 F.2d at 755. Similarity may be demonstrated through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'" *Zamora*, 222 F.3d at 762 (quoting *United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997)).

We have identified a number of non-exclusive factors in assessing similarity: (1) whether the acts occurred closely in time. *See Olivo*, 80 F.3d at 1468; *see also United States v. Bonnett*, 877 F.2d 1450, 1461 (10th Cir. 1989) (reviewing the admission of subsequent bad acts under Rule 404(b) and explaining that "[t]he closeness in time and the similarity in conduct [are] matters

left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion"); (2) geographical proximity, *see Zamora*, 222 F.3d at 762–63 (evidence of robbery of restaurant in same town as charged attempted bank robbery); (3) whether the charged offense and the other acts share similar physical elements, *see id.*; *see also Gutierrez*, 696 F.2d at 755 (subsequent robbery similar to charged robbery in that defendant in both instances drove getaway car and used her children as "cover"); and (4) whether the charged offense and the other acts are part of a common scheme, *see United States v. Becker*, 230 F.3d 1224, 1232-33 (10th Cir. 2000) (drug defendant's prior convictions for methamphetamine *possession* and *distribution* not admissible under Rule 404(b) in part because the prior acts lacked a common scheme with the charged offense of methamphetamine *production*).

     With these principles in mind, we turn to Mares's argument.

### 3. Application

     Mares's argument at trial was that she was a victim of trickery when she was arrested in 2002. She claimed her friend, Alejandro Dominguez, duped her into unknowingly carrying drugs across the Mexican/American border. Consequently, she maintains the subsequent arrest contributed nothing to the jury's determination of the elements of the prior charged crime. She also argues the subsequent conduct was too far removed in time and place to satisfy the

requirements of Rule 404(b).  In response, the government argues the evidence of

Mares's December 2003 arrest satisfies at least three of the purposes articulated

in Fed. R. Evid. 404(b): (1) it shows Mares's *knowledge* of the marijuana

canisters found in her gas tank in December 2002, (2) it establishes that

transportation of marijuana in her gas tank was part of a *plan* or conspiracy to

smuggle drugs, and (3) it tends to show the earlier conduct was not a *mistake* or

accident.  The government also argues the time and place of the two incidents are

close enough to satisfy Rule 404(b).  We agree.

The first *Huddleston* factor—proper purpose—is easily met here.  The

evidence tends to show Mares willingly and knowingly participated in a drug

trafficking scheme.  Her central defense to the charges was lack of knowledge

that the car contained drugs at the time of the 2002 arrest.  The 2003 arrest,

however, rebuts her version of events because it shows conduct bearing the same

hallmarks of the earlier border crossing: the drugs were smuggled in the same

secretive way, in both cases she claimed to be borrowing a car for which no

registration was available, she had a prepared cover story regarding her plans in

the United States, and finally in both cases she claimed Alejandro Dominguez was

the mastermind.  In light of these identifying circumstances, the district court did

not err in finding the subsequent similar act was offered for a proper purpose under Rule 404(b).[2]

The second *Huddleston* factor is relevance. This factor is also easily satisfied. In addition to the 2002 arrest's relevance to Mares's knowledge or plan, she admitted after her 2003 arrest that the same people who had paid her to transport the load of marijuana in 2002 forced her to transport the 2003 load. The evidence thus tends to show Mares (1) knew marijuana was in her gas tank in 2002, (2) made no mistake about carrying this load of illegal drugs in 2002, and (3) was party to a plan to transport the drugs in her vehicle's gas tank. Its similarity is obvious.[3]

The third *Huddleston* factor requires the court to balance the probative value of the evidence against its prejudicial effect under Fed. R. Evid. 403.

---

[2] Mares relies on a Seventh Circuit case to argue that subsequent narcotics activity is particularly irrelevant to prior drug crimes. *United States v. Betts*, 16 F.3d 748 (7th Cir. 1994). *Betts* does not advance her argument: the court specifically said that "when a defendant raises the defense that he was duped on the first occasion, evidence of subsequent conduct may be admissible to establish that his conduct was not inadvertent but knowing." *Id.* at 759.

[3] Mares also claims her conduct bears no "signature quality" which sets it apart from the hundreds, if not thousands, of drug arrests at the Mexican border. While this may be true, her conduct contains other indicia of similarity that make it admissible for the applicable purposes under Fed. R. Evid 404(b). "Signature quality" evidence, *see United States v. Oberle*, 136 F.3d 1414, 1419 (10th Cir. 1998) is often introduced to show identity. Evidence under Rule 404(b) need only be of a "signature quality" when being introduced for the purpose of proving identity by *modus operandi*. In this case, no one disputes that Mares committed both smuggling crimes.

Mares contends that the 2003 offense occurred too long after the charged offense—one year—and was too geographically distant to be of much probative value. Our cases make clear that the degree to which factors such as temporal distance and geographical proximity are important to a determination of the probative value of similar acts will necessarily depend on the unique facts of each case's proffered evidence. Here, the subsequent act is nearly identical to the prior act, and, combined with Mares's admission about the circumstances of the subsequent conduct, allow a fact finder to draw obvious conclusions bearing on Mares's defense that she was duped into carrying the drugs. The "exclusion of evidence under Rule 403 . . . is an extraordinary remedy and should be used sparingly." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001). While the evidence was "prejudicial" to Mares in the sense that it rebutted her theory of defense, such is the nature of evidence establishing an element of the charged crime. The district court did not err in finding its probative value highly relevant and therefore admissible.

The final factor in *Huddleston* allows the defendant to receive a limiting instruction upon request. Here, the court offered and issued a limiting instruction approved by Mares's counsel.

In sum, the district court properly found the evidence satisfied all four *Huddleston* factors. The evidence was thus properly admitted under Rule 404(b).

-13-

**B.  Sentencing Error**

Since *United States v. Booker*, 543 U.S. 220 (2005) we review sentences for reasonableness.  Mares argues that the district court committed two errors at her sentencing.  First, she claims it erred in calculating the applicable guideline range by wrongfully denying her a reduction in sentence for her minor role in the drug smuggling scheme, and improperly increasing her sentence for obstruction of justice based on her perjury at trial.  Second, she contends the 51-month sentence imposed was not reasonable in light of 18 U.S.C. § 3553(a).  We reject both arguments.

**1.  Adjustments/Guideline Error**

In considering whether the district court erred in its calculation of the applicable Guideline range, we review the district court's factual findings for clear error, *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006).  We review its legal conclusions regarding the application of the guidelines *de novo*. *Id.*

*Minor Participant.*  The district court found that Mares was not entitled to a two-level downward departure as a minor participant in the drug conspiracy.  The minor participant adjustment is available for:

> a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable . . . only for the quantity of drugs the defendant personally transported or stored.

USSG § 3B1.1, cmt. n. 3(A). According to Mares, she was only a low-level courier and did not play a major role in the drug ring; therefore, she should have received the adjustment.

The district court found to the contrary:

[T]he distance is greater than the other cases in which I give minor participation [to a defendant on the basis of serving as a mere "mule" in a drug-trafficking scheme]. If they're simply bringing it across the border and delivering it not further than Las Cruces, for example, to my mind, they're doing a very short turn-around trip for which they're usually not paid very much . . . . In this instance you have the fact of the defendant bringing along a friend and two children. . . . I do think in this instance there is more planning than is normal, and for that reason I don't think that minor participation is appropriate.

(R. Vol. III at 15–16.) When combined with the evidence that she had been "hired" for the 2002 drug run, the court did not err in finding the minor participant adjustment inapplicable.

*Obstruction of Justice.* Mares also argues that the district court erred by increasing her offense level by two levels for obstruction of justice. The Guidelines provide for a two-level increase if the defendant:

. . . (A) willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

USSG § 3C1.1.

-15-

The district court found that Mares had committed extensive perjury at trial in denying her role in the drug smuggling scheme.[4] Its conclusion rested on a number of observations gleaned from Mares's trial testimony. In particular, the court found that Mares was more deeply involved in the scheme than she suggested, given the many discrepancies in her testimony. For example, Mares lied at trial in a number of ways, claiming: (1) she did not know there was marijuana in the vehicle, (2) Alejandro Dominguez threatened her into carrying the 2003 load despite her initial contention that she did not know there was anything in her gas tank, (3) she was not hired to drive the first load of marijuana, (4) she did not notice anything strange about the gas gauge on the car she was driving even though approximately eighty percent of the gas tank's volume was occupied by marijuana, and (5) she was not party to a plan to conceal over 32 kilograms of marijuana in the car's gas tank despite the fact that she was arrested with marijuana hidden in her gas tank in 2003.

Under the sentencing guidelines, perjury can support an enhancement for obstruction of justice. USSG § 3C1.1, cmt. n. 4(b); *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1275-76 (10th Cir. 2004). The jury rejected Mares's

---

[4] In order to establish that a defendant committed perjury, the district court must find that (1) the defendant gave false testimony while under oath, (2) concerning a material matter, and (3) the false testimony was willful and not the result of confusion, mistake or faulty memory. *United States v. Chavez*, 229 F.3d 946, 955 (10th Cir. 2000). The district court properly found all three elements.

testimony that she was unaware her car contained drugs at the time of the 2002 arrest. The district court did not err in finding she wilfully obstructed justice at her trial by committing perjury, and as such properly increased her guideline offense level by two.

### 2. Reasonableness under 18 U.S.C. § 3553(a)

Mares's last argument is that the 51-month sentence imposed is unreasonable in light of the factors set out in 18 U.S.C. § 3553(a). We have held that a sentence within a correctly calculated guideline range is entitled to a presumption of reasonableness. *Kristl*, 437 F.3d at 1054.

At sentencing, Mares made several blanket policy arguments regarding the general unreasonableness of guideline sentences in drug cases, but did not articulate exactly how any one of the seven § 3553(a) factors should be applied to require a different sentence. Mares did argue that her lack of prior criminal history entitled her to the "safety valve" provision of 18 U.S.C. § 3553(f), reflected at USSG § 3B1.2. In arguing for a departure under the guidelines Mares also noted that she has two young children, one of whom has health problems, and that she herself has medical problems. We will construe her presentation of these circumstances as an argument for an adjustment based on her personal "history and characteristics" under § 3553(a)(1).

It is apparent from the transcript of the sentencing proceedings that the district court considered Mares's personal history and familial obligations when it elected to impose a guideline sentence at the very bottom of the applicable range. We will "not demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." *United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 (10th Cir. 2005). While the district court may have been able to justify a nonguideline sentence on the basis of Mares's personal history and characteristics, including her familial obligations, it was not obligated to do so. This is especially true in light of Mares's failure to explicitly present her family's situation in terms of § 3553(a)(1). We cannot say the district court imposed an unreasonable sentence in failing to impose a sentence outside the applicable guideline range.

## III. Conclusion

For the foregoing reasons, we hold that the district court properly admitted evidence of Mares's subsequent acts under Fed. R. Evid. 404(b) and imposed a reasonable sentence under 18 U.S.C. 3553(a).