FILED
United States Court of Appeals
Tenth Circuit

**January 26, 2010**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA.

Plaintiff-Appellee,

v.

GIANNI MONTAY MINNERS,

Defendant-Appellant.

No. 08-5130
N. Dist. of Oklahoma
D.C. No. 4:08-CR-00044-TCK-1

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, HOLLOWAY**, and **HOLMES,** Circuit Judges

Defendant-Appellant Gianni Minners was convicted of violating 18 U.S.C. §

922(g)(1) and § 924(a)(2), for being a convicted felon in possession of a firearm and

ammunition. Mr. Minners raises three issues on appeal: (1) the admission of a 911 phone

call recording; (2) the admission of a post-arrest video of Mr. Minners; and (3) the

District Court's failure to give the jury limiting instructions regarding this evidence. We

conclude that the District Court did commit certain errors in admitting the evidence.

However, even so, because of the overwhelming weight of the government's evidence,

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32. 1 and 10th Cir. R. 32.1.

any error was harmless. Thus, the convictions are AFFIRMED.

I. BACKGROUND

On the evening of January 19, 2008, Jameece Whaley called 911 after allegedly being assaulted by Mr. Minners. She began the call by reporting to the operator in a calm voice that she wanted to "make a report" because her ex-boyfriend had broken the windows in her car the night before and had just "busted down" her door and assaulted her with a gun. Supp. R., Audio Recording of 1/19/08. The assault had occurred fifteen minutes prior and Ms. Whaley had been unable to call 911 earlier because every time she had tried, Mr. Minners had taken the phone from her or threatened her with the gun. *Id.*

She indicated she had left her apartment and was making the call from her cousin's apartment. *Id.* She did not know Mr. Minners's current location, only that he had "walked away." *Id.* She gave the operator the address of her current location but asked that the officers not park in front of the building because Mr. Minners knew the location. *Id.* When asked if she needed emergency medical assistance, Ms. Whaley answered she did not and she just wanted to make a report. *Id.*

Officer Todd Taylor of the Tulsa Police Department responded to the domestic disturbance with a gun call. He met Ms. Whaley at a location other than where the altercation had occurred and she appeared to have been assaulted. Her shirt was torn and her nose, breast, and knee were scraped. Ms. Whaley informed Officer Taylor that Mr. Minners had assaulted her and was carrying a firearm.

Officer Taylor called for assistance and proceeded to a quadplex (an apartment

complex with four units: two upstairs and two downstairs) where Mr. Minners allegedly resided. Along with Officers Lance Eberle, Anthony First, Jason Edwards, Liz Weatherly, and Detective Don Wright, Officer Taylor entered the quadplex on the ground floor. Standing at the bottom of the dark and unlit central staircase, the officers heard three individuals coming down the stairs. Once the individuals rounded the landing between the two floors, the officers turned on their flashlights, identified themselves as police, and ordered the three to stop. Instead of obeying, the three turned and ran up the stairs. The officers followed.

When the officers turned on their flashlights they saw that the three men were all wearing "hoodies," which are hooded sweatshirts. The man who was nearest the bottom of the stairs wore a dark blue or black hoodie and a skull cap. That man was recognized by some of the officers as Mr. Minners. The other two men were wearing light-colored hoodies. When the officers announced their presence and ordered the men to show their hands, Officer First saw Mr. Minners disobey and shove his hands toward the waistband in the front of his pants. This alarmed Officer First because that is typically where people keep weapons.

As the men ran back up the stairs, the officers witnessed Mr. Minners make a throwing motion with his right arm as he neared the second story window at the top of the staircase. Officers heard the sound of breaking glass and continued to pursue the men up the stairs. Subsequently, they arrested the suspects. As soon as the men had begun running up the stairs, Officer Eberle ran outside where he could keep an eye on the

second story window – the only other exit.  He saw a man wearing a dark hoodie make a throwing motion toward the window.  Officer Eberle heard glass shatter.  He saw a "shiny object" fly out of the window and land about two feet from him on the ground below.  R., Vol. II, at 119.  This shiny object was a loaded revolver.  There had not been any guns lying on the ground outside the building just a few minutes earlier when the officers entered the quadplex.

Mr. Minners was arrested and brought to the Tulsa Police Department's Uniform Division Southwest for booking.  As the officers processed the evidence they discussed among themselves, but in the presence of Mr. Minners, the make of the gun.  Mr. Minners spontaneously interjected into the conversation that "it was a Taurus," he had the gun "for protection," and Ms. Whaley would recognize the gun "not because he assaulted her with it; because she had seen him carry it in the past and she knew what kind of gun he carried."  R., Vol. II, at 122-23.

Shortly after Mr. Minners was arrested, he was interviewed by Corporal Nathan Schilling.  The twenty-three minute interaction was recorded.   Supp. R., Video Recording on 1/20/08.  At the start of the interview Corporal Schilling read Mr. Minners his *Miranda* rights.  *Id.*  Mr. Minners refused to waive them and answer questions without his attorney being present.  *Id.*  As Corporal Schilling was getting ready to leave the room, Mr. Minners struck up a conversation with him.  *Id.*

The topics of conversation were varied and changed rapidly.  The tone of the conversation was calm but filled with expletives.  Mr. Minners discussed his relationship

with his girlfriend, Ms. Whaley: her miscarriage, how she was controlling, that he had cheated on her, how her friends were liars, that he did not assault her, and that he loved her. *Id.* Mr. Minners revealed that their altercation stemmed from Ms. Whaley's discovery that Mr. Minners had impregnated one of the other two girls he was seeing. He lamented that he was homeless, that he had plans to attend church the next day, and was hoping to turn his life around and get a job through a church program. *Id.*

Mr. Minners also revealed he had just spent nine years in prison for his involvement with drugs and for possession of a firearm. Since his release in May a few months earlier, he had only been employed for a period of one and one-half days before he was "let go." *Id.* When asked about the gun, he explained he had either won the gun in a dice game or purchased it with his winnings from a dice game. *Id.* He had only owned the gun for three days and had purchased it to protect himself from Ms. Whaley's "crew." *Id.* He claimed he had been threatened and shot at by Ms. Whaley's friends and/or family in the past and he wanted protection. *Id.* Mr. Minners explained he had shown Ms. Whaley the gun in order to scare off her crew and make it clear that he had protection. *Id.* He repeatedly asserted he did not assault Ms. Whaley but did not deny possession of the gun. *Id.* However, according to Mr. Yerton of the Tulsa Police Department, it was his opinion that none of the partial latent fingerprints that he developed belonged to the known fingerprints that had the name of Mr. Minners associated with them. R., Vol. II, at 204.

During Mr. Minners's two day jury trial, the District Court admitted evidence of

the entirety of both Ms. Whaley's 911 call reporting the domestic disturbance and the twenty-three minute post-arrest video of Mr. Minners. The court did not give the jury any cautionary instructions as to how to consider either recording. The jury convicted Mr. Minners of violating 18 U.S.C. § 922(g)(1) and § 924(a)(2), for being a convicted felon in possession of a firearm and ammunition. Mr. Minners filed an appeal.

II. DISCUSSION

The District Court had jurisdiction because Mr. Minners was charged with a federal offense. 18 U.S.C. § 3231. This court has jurisdiction over the appeal of the judgment pursuant to 28 U.S.C. § 1291.

### A. Admission of the 911 Call

Mr. Minners appeals the admission of the 911 recording on both evidentiary and constitutional grounds. Even if the District Court did abuse its discretion by admitting the tape, and its admission violated Mr. Minners's Sixth Amendment right to confront witnesses testifying against him, any error would have been harmless beyond a reasonable doubt and thus the convictions are affirmed.

### 1. Whether the District Court abused its discretion by admitting the 911 recording

> We review the district court's admission of evidence for an abuse of discretion. *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006). We cannot reverse a district court's ruling if "it falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." *Id.* (internal quotation marks omitted).

*United States v. Smith*, 534 F.3d 1211, 1218 (10th Cir. 2008). Mr. Minners asserts the

District Court abused its discretion by admitting the recording: (1) because the ruling was made without previewing it and performing a Federal Rule of Evidence 403 prejudicial versus probative value balancing test; (2) because the recording was both inadmissible prior bad acts evidence and hearsay evidence offered for the truth and not to give context to the investigation; and (3) because the tape's admission prejudiced Mr. Minners's right to a fair trial. We find that even if the District Court abused its discretion by admitting the tape in violation of the Federal Rules of Evidence, the error was harmless.

First, Mr. Minners's assertions that the District Court admitted the tape without previously viewing it or conducting a 403 balancing test regarding the prejudicial nature of the tape are without support. There is no evidence in the record that the court either did or did not preview the recording. However, even if the court permitted playing the tape to the jury without previewing it, the tape's prejudicial value did not substantially outweigh its probative value, as prohibited by Rule 403. The recording was not likely to "provoke[] an emotional response in the jury or otherwise tend[] to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Id.* at 1218-19 (quoting *United States v. Portillo-Quezada*, 469 F.3d 1345, 1353 (10th Cir. 2006)). Ms. Whaley related that she had been assaulted with a weapon and Mr. Minners was the man who had done so. The call's prejudicial value did not substantially outweigh its probative value of Mr. Minners's possession of the gun as prohibited by Rule 403. Therefore, the District Court did not abuse its discretion.

Second, Mr. Minners argues the call was inadmissible to provide context or explanation for the investigation because Officer Taylor had already testified he was responding to a domestic violence call.  He asserts the 911 recording was inadmissible both because it was evidence of his prior bad acts but also because it was offered not for the purpose of providing context for the investigation but for the truth of the matter.

The tape tended to prove Mr. Minners committed other bad acts such as breaking the windows of Ms. Whaley's car the previous evening.  Because the domestic violence call was what started the investigation, the general details of the event are "inextricably intertwined" with the charged offense and "formed an 'integral and natural part of [Ms. Whaley's] accounts of the circumstances surrounding the offense[].'"  *United States v. Johnson*, 42 F.3d 1312, 1316 (10th Cir. 1994) (quoting *United States v. Costa*, 691 F.2d 1358, 1361 (11th Cir. 1982)).  Thus, the evidence concerning Mr. Minners's alleged prior bad acts discussed in the 911 call was admissible.

The alleged prior bad acts listed in the tape were only mentioned once without any additional emphasis or explanation.  The prejudicial effect of these allegations was minimal and did not outweigh their probative value.  Additionally, the "familiar, standard rule [is] that the prosecution is entitled to prove its case by evidence of its own choice" and is not bound by the defendant's preferred method of presenting the evidence.  *Old Chief v. United States*, 519 U.S. 172, 186-87 (1996) (citing *Parr v. United States*, 255 F.2d 86, 88 (5th Cir. 1958)).  The fact that the same evidence could have been presented in a different and less prejudicial manner does not presumptively make the way in which

it was presented an error. *See id.* The decision to admit the entirety of the tape was a "permissible choice" for the District Court and not an abuse of discretion in this respect.

However, it was error for the District Court to admit the 911 call since it was hearsay evidence offered to prove the truth of the matter asserted (possession of the gun by Mr. Minners). "Out-of-court statements can be admitted as background for an investigation only if they provide information that is necessary to explain the government's subsequent actions, and it is not likely that the jury will 'consider the statement[s] for the truth of what was stated with significant resultant prejudice.'" *United States v. Hinson*, 585 F.3d 1328, 1336 (10th Cir. 2009) (quoting *United States v. Cass*, 127 F.3d 1218, 1223-24 (10th Cir. 1997) (citations and quotations omitted)). Here, the government claimed it offered the 911 recording not for the truth of the matter asserted but instead to give context to the investigation. However, "[w]here the government introduces evidence that bears on the ultimate issue in the case but that is not necessary to explain the background of a police investigation, the only reasonable conclusion we can reach is that the evidence was offered, not as background, but as support for the government's case against the defendant." *Id.*, at 1337.

Since Officer Taylor had already explained the nature of the 911 call that triggered his particular investigation, it appears the call was actually offered for no other purpose than to prove the ultimate issue: that Mr. Minners was in possession of a firearm. Although the District Court committed error by admitting the evidence in this respect, given the overwhelming weight of the government's case against Mr. Minners, any error

would have been harmless.  As noted, several officers saw Mr. Minners in possession of the gun, it was observed that he threw the gun through the window and it was subsequently found on the ground, Mr. Minners expressed knowledge of the make of the gun, why he had it, and admitted to possession of the gun in his post-arrest interview.

Third, Mr. Minners alleges the admission of the tape prejudiced his right to a fair trial because no cautionary instructions were read to the jury regarding the limited use of the 911 call.  However, in view of the overwhelming evidence of Mr. Minners's guilt, any error in failing to give the cautionary instructions here was harmless and did not prejudice his right to a fair trial.

2.  Whether the 911 recording's admission violated Mr. Minners's right to confront

Pursuant to *Crawford v. Washington*, a defendant's Sixth Amendment Confrontation right, according to the Framers, bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."  541 U.S. 36, 53-54 (2004).  In this case, the recording of Ms. Whaley's 911 call was admitted against Mr. Minners and Ms. Whaley did not testify.  Therefore, if the call was testimonial hearsay, then Mr. Minners had a constitutional right to cross-examine the speaker, Ms. Whaley. *See id.*

Generally, this court reviews a District Court's decision to admit evidence under an abuse of discretion standard.  *United States v. Schene*, 543 F.3d 627, 640 (10th Cir. 2008).  However, when the evidence implicates the Confrontation Clause, the standard of

review is de novo. *United States v. Townley*, 472 F.3d 1267, 1271 (10th Cir. 2007). If this court finds the District Court violated Mr. Minners's right to confront his accuser, which standard for reversal should be used turns on the question of issue preservation. If Mr. Minners preserved his constitutional objection, the government would bear the burden to prove the error was "harmless beyond a reasonable doubt." *See United States v. Ledford*, 443 F.3d 702, 707 (10th Cir. 2005) (citing *United States v. Jefferson*, 925 F.2d 1242, 1253-54 (10th Cir. 1991) (explaining that a hearsay error alleged on the basis of the Federal Rules of Evidence alone is reviewed for "harmless error" and a hearsay error alleged under the Confrontation Clause is reviewed under *Chapman*'s "harmless beyond a reasonable doubt" standard)). If Mr. Minners failed to preserve his objection, then he has the burden to prove the District Court committed a plain error which "(1) was obvious, and (2) affected [his] substantial rights." *United States v. Solomon*, 399 F.3d 1231, 1238 (10th Cir. 2005) (citing *United States v. Perez*, 989 F.2d 1574, 1582 (10th Cir. 1993 (en banc)).

There is some debate as to whether Mr. Minners properly preserved his Confrontation Clause objection. Mr. Minners's counsel did not explicitly state that his client's Sixth Amendment right to confront was being violated by the admission of testimonial evidence. However, Mr. Minners's counsel did object and make at least one reference to his inability to cross-examine the witness when the government sought to play the 911 recording to the jury. R., Vol. II, at 87. The government responded by saying the phone call was not considered testimonial under the definition explained in

*Davis v. Washington*, 547 U.S. 813, 822 (2006) (defining the parameters of the term "testimonial hearsay"). The evidence was admitted. R., Vol. II, at 88-89. It was clear from the context of the objection and the ensuing sidebar that both parties and the court understood there was a constitutional objection being asserted. Thus, the standard for reversal places the burden squarely on the government to prove any error was harmless beyond a reasonable doubt. *Ledford*, 443 F.3d at 707.

We accept the actions of Mr. Minners's counsel as adequate to preserve his Confrontation Clause argument. Assuming arguendo that it was constitutional error for the 911 tape to have been played to the jury, the admission is reviewed for whether it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."); *United States v. Summers*, 414 F.3d 1287, 1303 (10th Cir. 2005). There was testimony by several officers that they saw Mr. Minners throw the gun. Mr. Minners's own statements were in evidence confirming that he possessed the gun, including the videotape where Mr. Minners admitted that he possessed the gun. This strong evidence against Mr. Minners reduced the admission of the 911 call to limited importance and made any error harmless beyond a reasonable doubt.

### B. The Post-Arrest Videotape

At trial, Mr. Minners informed the court he had no objection to playing the entire post-arrest video to the jury. R. Vol. II, at 214. Therefore, the standard of review on

appeal is for plain error. *United States v. Winder*, 557 F.3d 1129, 1136 (10th Cir. 2009).

> Consequently, to obtain relief, Mr. Garza must show "(1) [an] error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, [this] court may then exercise its discretion to notice [the] forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Garza*, 566 F.3d 1194, 1200 (10th Cir. 2009) (quoting *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000)).

On appeal, Mr. Minners now asserts that the District Court committed plain error because (1) the majority of the video was irrelevant and (2) the irrelevant, uncharged prior bad acts Mr. Minners admitted committing prejudiced his right to a fair trial and were improper character evidence. Although most of the twenty-three minute video was irrelevant and should have been redacted, due to the overwhelming evidence of Mr. Minners's guilt, the error did not seriously affect the proceeding and does not require reversal.

Federal Rule of Evidence 801(d)(2)(A) exempts from the definition of hearsay any statement made by a party that is offered against that party. All of Mr. Minners's statements captured on the video were offered against him in court and would therefore have been exempted from the definition of hearsay as an admission by a party opponent. Although the statements passed the hearsay hurdle, in order to be admitted at trial, Federal Rule of Evidence 402 would nonetheless apply: the statements must be relevant and make the existence of a fact of consequence to the action more or less probable than it would have been otherwise. Whether Mr. Minners was intending to get a job, go to

church, or was homeless did not make it more or less likely that he possessed a gun. Therefore, many of Mr. Minners's statements were irrelevant and should not have been presented to the jury.

Federal Rule of Evidence 404(b) prevents the admission of character evidence against a defendant unless it is offered to prove some independent fact such as motive or intent. This presents an additional issue for the admissibility of portions of the tape. *United States v. Oberle*, 136 F.3d 1414, 1418 (10th Cir. 1998) ("Although the statements are party admissions under Rule 801(d) and thus not hearsay, they must nevertheless also be analyzed for admissibility under Rule 404(b) because they reveal or suggest prior criminal conduct.") While the discussion of why Mr. Minners had the weapon may have been relevant, the facts that he had just been released from prison for possession of a gun and had been unfaithful to his girlfriend were not. The District Court erred by not redacting the video to play only the relevant portions.

The error of not redacting the irrelevant and prejudicial parts of the post-arrest videotape was not of substantial effect. The testimony of several officers seeing Mr. Minners's possession of the gun and throwing it out the window, and Mr. Minners's admission he had had the gun for some three days amounted to serious proof against Mr. Minners. His rights were not substantially affected and this claim of error is rejected.

### C. Cautionary Jury Instructions

The District Court did not give the jury any cautionary instructions as to either the evidence of the 911 call recording or the prior bad acts Mr. Minners admitted to

committing in the post-arrest video.

Mr. Minners failed to request any cautionary instructions as to the 911 call. This court considers the party's failure to request cautionary instruction and the court's failure to administer such instruction *sua sponte* for plain error. *United States v. Gomez*, 67 F.3d 1515, 1527, n.15 (10th Cir. 1995). Therefore, the failure to give cautionary instructions results in a reversal only when the defendant's rights were substantially affected. *Id.* Given the extensive proper evidence presented by the government, Mr. Minners's rights were not substantially affected.

At the jury instructions conference, Mr. Minners's counsel declared he was reconsidering his request for a prior bad acts instruction and informed the court he no longer wanted the instruction. R., Vol. II, at 226. Waiver is "the intentional relinquishment or abandonment of a known right," and when Mr. Minners's counsel considered and then declared he did not want the instruction, he waived the issue on appeal. *See United States v. Zubia-Torres*, 550 F.3d 1202, 1204-05 (10th Cir. 2008). Since the issue was waived, we cannot consider it here. *Id.*

III.  CONCLUSION

The District Court committed harmless error when it admitted the 911 call in order to explain the officers' further actions. The court also erred by playing the entire twenty-three minute post-arrest video of Mr. Minners before the jury, but this error did not affect his substantial rights and his convictions should not be reversed for this reason. Finally,

the failure to give cautionary instructions did not affect the trial in a manner that would constitute plain error. Therefore, we AFFIRM.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge